UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**HENRY L. WATSON, III,**

        **Plaintiff,**

v.                                      Case No. 23-CV-1476

**WISCONSIN DEPARMENT OF CORRECTIONS,** *et al.,*

        **Defendants.**

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff Henry L. Watson, III, who is incarcerated at Waupun Correctional Institution and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Watson was allowed to proceed on a claim against the defendants under the Eighth Amendment for Waupun's 24-hour lockdown policy, which created allegedly unconstitutional conditions of confinement, including limited shower time, limited recreation time, limited contact with family and friends, limited meals, limited access to his media account, and no access to his legal materials. The defendants filed a motion for partial summary judgment for failure to exhaust administrative remedies, asserting that Watson failed to properly exhaust his administrative remedies as to all the allegedly unconstitutional conditions except for his claim relating to access to his legal materials. (ECF No. 19.) The parties have consented to the jurisdiction of a

magistrate judge. (ECF Nos. 6, 14.) The motion is fully briefed and ready for a decision.

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the

record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject

3

of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet the filing requirements, including if the inmate complaint raises more than one issue. Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority (RA). Wis. Admin. Code § DOC 310.10(12). The RA has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the RA's decision, an inmate may appeal the RA's decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC

310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the ICE acknowledged receipt of the inmate complaint, he may appeal to the CCE. Wis. Admin. Code § DOC 310.11(3).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). APPEAL?? The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Watson's Allegations*

Watson alleges that, because of Waupun's 24-hour lockdown policy at the direction of Warden Randall R. Hepp, he was subjected to unconstitutional conditions of confinement. (ECF No. 1 at 2.) These include being allowed out of his cell for only one 15-minute shower per week and 45-60 minutes of recreation time per week. (*Id.*) Some weeks, recreation time was not allowed at all. (*Id.*) Additionally, Watson has been unable to meaningfully contact his family and friends because prisoners are not allowed in-person visits, and he is unable to leave his cell to load money onto his media account to email them. (*Id.*) Additionally, because of the

5

lockdown, Watson is served only two meals a day consisting of "one sandwich, pint of milk, chips, and a tiny pack of cookies." (*Id.* at 3.) Also, Watson is denied access to his law materials, making it difficult to litigate his cases. (*Id.*)

*Watson's Attempts to Exhaust His Administrative Remedies*

The defendants assert that Watson filed only one relevant inmate complaint—WCI-2023-6938. (ECF No. 21, ¶¶ 5-6.) In that inmate complaint Watson asserted that he was being denied law library materials. (*Id.*, ¶ 6.) Watson took this inmate complaint through the full ICRS process. (*Id.*, ¶¶ 6-10.)

Watson does not dispute that this was the only inmate complaint he took fully through the inmate complaint process regarding his claims relating to the conditions of his confinement. (ECF No. 24 at 1.) However, he states that for the majority of his issues with the lock-down policy, the inmate complaint system was rendered unavailable to him. (*Id.*) Specifically, in an effort to fulfill the requirement that a prisoner attempt to informally resolve his complaints before filing a formal complaint, Watson asserts he filed several form DOC-0643s (Information/Interview Request forms). (*Id.*) Watson never received a response to any of those Information/Interview Request forms. (*Id.*)

Watson also asserts that he filed formal inmate complaints "in the old tablet system regarding the fights with my cellmates every day." (ECF No. 24 at 2.) He states that he received a response several weeks later to one of his complaints and never heard about the others. (*Id.*) When he tried to get access to copies of these

6

complaints to send to the court in response to the current motion to dismiss, he states that prison administration denied him access.[1]

*Analysis*

Watson argues that he could not exhaust his administrative remedies because the inmate complaint process was unavailable to him. A prisoner can overcome his failure to exhaust his administrative remedies where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

Watson states that he did not file formal written complaints for several of his issues with the 24-hour lockdown policy because he never received responses to his attempts to resolve the issues informally using the Interview/Information Request forms. Without a response to his Interview/Information Request, filing a formal grievance would be pointless, because the ICE would simply reject the grievance for not complying with the requirement to attempt to informally resolve the issue first.

---

[1] Watson also states that he filed a motion to get court assistance with obtaining these records (ECF No. 18) but never heard from the court. (ECF No. 29 at 3.) The court resolved this motion on May 16, 2024, informing Watson that he cannot use Public Records Requests to seek this information from Waupun but that he needed to use the discovery process. (ECF No. 26.)

However, the grievance process requires that a prisoner only *attempt* to informally resolve an issue before filing a formal complaint. Nothing stops a prisoner from explaining on his grievance form that he tried to informally resolve a complaint by sending in an Interview/Information Request but received no response. Watson is essentially arguing that it would have been futile to file a formal complaint without a response to his informal complaint. But futility is not an exception to the exhaustion requirement. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 536-37 (7th Cir. 1999) ("No one can *know* whether administrative requests will be futile; the only way to find out is to try." (emphasis in original)).

As for Watson's argument that he attempted to file formal complaints about his issues with his cellmates but could not get access to the documentation proving this, it is irrelevant. Watson was not allowed to proceed on a claim regarding problems with his cellmates. Even if the court had those records or took Watson at his word as to the substance of those grievances, it is outside the scope of the screening order. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013) (holding a prisoner is limited to the scope of the screening order).

Watson has not demonstrated that the inmate grievance process was unavailable to him or that he otherwise exhausted his administrative remedies as to the majority of his complaints regarding the 24-hour lockdown policy. Therefore, the defendants' motion for partial summary judgment on exhaustion grounds is granted.

8

## CONCLUSION

Watson failed to exhaust his administrative remedies for all his issues with the 24-hour lock down policy except his complaint relating to accessing his legal materials. The court grants summary judgment in favor of the defendants as to those claims. The only claim with which Watson may proceed is his claim that he was denied access to his legal materials. The court will issue an amended scheduling order at a later date to move the case forward.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 19) is **GRANTED.**

Dated at Milwaukee, Wisconsin this 30th day of September, 2024.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge